UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JILLIAN GERSTENBERGER, individually,
and on behalf of all others similarly situated,

     Plaintiffs,

vs.                                         Case No. 18-22312-Civ-Torres

BOLUFE ENTERPRISES, INC.,

     Defendant.

_____/

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**and incorporated**

## MEMORANDUM OF LAW

Plaintiff, Jillian Gerstenberger, individually and on behalf of the Settlement Class defined herein (hereinafter "Plaintiffs"), and Defendant, Bolufe Enterprises, Inc. (hereinafter "Defendant") (collectively the "Parties"), hereby move the Court for entry of an order preliminarily approving the Settlement Agreement (hereinafter "Agreement" attached as Exhibit 1) and Notice of Class Action Settlement (hereinafter "Class Notice," attached as Exhibit 1-B), agreed to by the Parties in this matter.  In support of this Motion, the Parties state as follows:

### I.     SUMMARY OF THE LITIGATION

1) Plaintiff brought this action, individually and on behalf of a group of similarly situated persons, alleging that Defendant violated the Telephone Consumer Protection Act (TCPA), and the regulations promulgated under the TCPA, by using an automatic telephone dialing system to send text message advertisements promoting its used car business to Plaintiff and members of the Settlement Class, without obtaining prior express written consent.

2)      Specifically, Plaintiff has alleged that Defendant sent text message advertisements without first obtaining a written agreement signed by the person or entity being texted that states: "By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice."  47 C.F.R. 64.1200(f)(8).

3)      Defendant denies these allegations, denies all liability for the claims made in the litigation, and further denies violating the TCPA and the regulations promulgated under the TCPA.

4)      Following extensive discovery on Plaintiff's allegations, including the exchange of documents, preparation and responses to multiple requests for production of documents, interrogatories, and the service of subpoenas on multiple, relevant third parties, the Parties have determined and stipulated, solely for the purposes of settlement, that Defendant successfully sent text message advertisements to 19,452 persons and/or entities, between May 10, 2018, and July 6, 2018.  *See* Bennett Decl. at 4 (Exhibit 2).

5)      At the same time, the Parties engaged in arms' length negotiations for a comprehensive resolution of this litigation.  These negotiations included informal settlement discussions between counsel, a formal, all-day mediation with a certified mediator, Steven Jaffe, who has significant experience regarding the litigation and settlement of claims brought under the TCPA, fourteen (14) days of continuing negotiations between counsel following formal mediation, and, finally, the acceptance of a Mediator's Proposal put forth by Steven Jaffe and believed by him and both Parties to be a fair settlement of this dispute.  This proposal consisted of the creation of a $495,000.00 settlement fund from which claims, administration costs, attorneys' fees, and an incentive award to the named plaintiff would be paid.

6)      Following acceptance of the mediator's proposal, Class Counsel continued significant arm's length settlement discussions with defense counsel that ultimately resulted in a Settlement Agreement to formally resolve the litigation.  As a result of these negotiations, the Parties have agreed to a resolution of all claims brought against the Defendant in this action, as set forth in the attached Agreement.

7)      The Parties submit that the attached Agreement constitutes a fair, reasonable, and adequate resolution for the Plaintiff and the Settlement Class, pursuant to Rule 23(e)(2), Federal Rules of Civil Procedure, and that the terms of the resolution, as set forth in the attached Agreement, are in the best interests of the Parties and the public.

8)      The Parties therefore request that the Court enter an order (1) granting preliminary approval of the proposed settlement as set forth in the attached Agreement; (2) preliminarily certifying the proposed settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3); (3) directing that members of the settlement class be given notice of the pendency of this action and the proposed settlement in the form and manner proposed by the Parties in the attached Agreement (Exhibit 1) and Class Notice (Exhibit 1-B); and (4) scheduling a hearing at which the Court will consider final approval of the settlement and entry of the attached Agreement.

9)      A proposed preliminary order approving settlement and ordering the Class Notice to be transmitted to each member of the Settlement Class, in the form and manner proposed by the Parties, is attached as Exhibit 1-A (proposed preliminary order), for the Court's convenience and consideration.

## II.   OUTLINE OF PROPOSED SETTLEMENT

### A.   The Settlement Class

The proposed settlement has been reached on behalf of the "Settlement Class," which is

defined as follows:

> All persons and entities that were sent one or more text messages by or on behalf
> of Defendant, advertising or promoting Defendant's goods or services, at any time
> between May 10, 2018, and July 6, 2018.

Excluded from the Settlement Class are Defendant, any parent, subsidiary, affiliate or

controlled person of Defendant, as well as the officers, directors, agents, servants or employees

of Defendant and the immediate family members of such persons, the named counsel in this

litigation, and any member of their office and/or firm.

### B.   Benefits to Class Members

Defendant, solely for the purposes of settlement and without admitting or conceding any

fault, wrongdoing or liability, and in order to avoid the inconvenience and expense of further

litigation, has agreed to make available (or cause its insurers to make available) $495,000.00 to

settle this case on a claims-made basis (hereinafter "Settlement Fund").   A class member must

submit a timely and valid proof of claim form, which is attached to the Class Notice, in order to

receive a share of the Settlement Fund.   The Settlement Administrator will mail each member of

the Settlement Class who submits a timely and valid proof of claim form the lesser of $175.00 or

a pro-rata distribution of the Settlement Fund ($495,000.00), after the deduction of the

Settlement Administrator's fees and payments to Settlement Class counsel and the Class

Representative, as outlined in Paragraph E below.

### C.      Notice

The Parties have agreed that, within fourteen (14) days of preliminary approval of the attached Settlement Agreement (Exhibit 1) and Class Notice (Exhibit 1-B) by the Court, the Settlement Administrator will send the Class Notice by email to the email addresses of the Settlement Class members.  The Class Notice contains a proof of claim for to be returned by Settlement Class members in order to qualify for payment, directs Settlement Class members to a website application where they can alternatively submit a proof of claim form in order to qualify for payment, and provides contact information for toll-free customer service support.  The Settlement Administrator will send the Class Notice on a postcard by U.S. Mail to the last known address of any Settlement Class member who does not have an email address, or whose email address is unknown or not valid, or where the email is not received.  Settlement Class members will have sixty (60) days from the date the Class Notice is sent to return the proof of claim form, file objections, or opt out of the settlement.

### D.      Release of Claims

Subject to final approval by the Court, all members of the Settlement Class, who do not opt out of the proposed Settlement Class as required in the Class Notice, for and in consideration of the terms and undertakings outlined in the attached Agreement (Exhibit 1), the sufficiency and fairness of which are acknowledged, release and forever discharge Defendant (and each of its current and former parents, subsidiaries, affiliates, controlled companies, officers, directors, managers, shareholders, members, partners, employees, predecessors, successors, assigns, agents, attorneys and insurers including Universal Underwriters Insurance Company ("UUIC") (hereinafter the "Released Parties") from any and all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, and costs, whether

known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, that have been, could have been, or in the future might be asserted, that arise out of or relate to the transmission of the text message advertisements sent by or on behalf of the Defendant.

### E.   Incentive Award and Attorneys' Fees

Subject to final approval by the Court, the Parties have agreed that Plaintiff will be awarded $7,500.00 from the Settlement Fund as compensation for her role as Class Representative.  Subject to final approval by the Court, the Parties have further agreed that Class Counsel will be awarded an amount equal to one-third of the Settlement Fund ($165,000.00), inclusive of attorneys' fees and reasonable out-of-pocket expenses.  Defendant consents to and has agreed not to object to a request for these amounts, and has agreed not to appeal any award that does not exceed these amounts.

### F.   Court Adoption and Jurisdiction

The attached Agreement is contingent upon entry of an order giving approval to the terms of this Agreement.  If the Court refuses to grant approval and/or modifies any of the terms of the Agreement, or if the Court's Approval Order is reversed or materially modified on appeal, then the attached Agreement shall be terminated (unless the Parties agree otherwise in writing) and neither the fact that this Agreement was made nor any stipulation, representation, agreement or assertion made in the attached Agreement may be used against any Party.

The Parties further agree that the Court shall retain continuing jurisdiction over this matter and the Parties, including all members of the Settlement Class, the administration and enforcement of the attached Agreement, and the benefits to the Settlement Class.  Any dispute or

controversy with respect to the interpretation, enforcement, or implementation of the attached Agreement shall be presented by motion to the Court.

### III.    PRELIMINARY COURT APPROVAL

#### A.    The Agreement is Fair, Reasonable and Adequate

Rule 23(e), Federal Rules of Civil Procedure, requires judicial approval for any compromise of claims brought on a class basis.  Review of a proposed class action settlement generally involves a two-step process:  preliminary approval and a fairness hearing.  *See Manual for Complex Litigation, Fourth*, § 21.632 (West 2004); *see also Holman v. Student Loan Xpress, Inc.*, 2009 U.S. Dist. LEXIS 113491, *4 (M.D. Fla. Nov. 19, 2009).  First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms.  *See id*; *see also Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, *2 (S.D. Fla. 2010) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason.").  Approval of a proposed settlement is a matter within the broad discretion of the district court.  *See Faught v. American Home Shield Corp.*, 2011 WL 5119115, *5 (11th Cir. 2011); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).

It is well established that there is an overriding public interest in settling and quieting litigation, particularly in the context of a class action.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)[1]; *see also Newberg on Class Actions* § 11:41, at 87 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In*

---

[1]  In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all decisions of the Fifth Circuit rendered prior to October 1, 1981, as binding precedent.

*re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998) (same); *Access Now, Inc. v. Claires Stores, Inc.*, 2002 WL 1162422 at *4 (S.D. Fla. 2002).   Under the proposed Agreement, members of the Settlement Class are <u>ensured</u> a significant benefit, as opposed to "the mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

In furtherance of this public interest, in considering a proposed settlement, the trial court need not reach any ultimate conclusion on the substantive factual or legal issues of Plaintiffs' claims. *See Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978).  "We recognize that since the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination of the merits." *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972) (citations omitted).  Instead, the court's primary concern should be whether the proposed settlement is fair, reasonable and adequate.  *See Cotton*, 559 F.2d at 1331.  If there are no obvious deficiencies, and the settlement falls within the range of possible approval, it should be preliminarily approved.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1057 (9th Cir. 2008).

In making this preliminary determination of the fairness of the settlement, the Eleventh Circuit has held that the Court may consider any of the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and

duration of litigation; (5) the substance and amount of opposition to the settlement; (6) the stage of proceedings at which the settlement was achieved; and (7) the judgment of experienced counsel. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also Elkins v. Equitable Life Ins. of Iowa*, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998).

The proposed settlement here, as set forth in the attached Agreement, is fair, reasonable and adequate. The attached Agreement is the result of wide-ranging discovery and is the product of extensive, arms-length negotiations between experienced counsel, reached with the assistance of a certified, neutral, third-party mediator with particular expertise regarding the litigation and settlement of actions brought under the TCPA. *See Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ("[T]he settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of an experienced mediator at JAMS … In sum, the court finds that viewed as a whole, the settlement is sufficiently 'fair, adequate, and reasonable' such that approval of the settlement is warranted.").

Both the Parties and the mediator here have all concluded that the proposed settlement is in the best interests of their respective clients and the Settlement Class as a whole, and strikes a reasonable balance between the benefits the Settlement Class will receive under this settlement, the fact that Defendant will vigorously oppose the claims asserted in the litigation if the settlement is not approved, and the attendant risks, costs, uncertainties, and delays of litigation. *See Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."); *see also In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair."); *In re*

*NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation, Third,* § 30.41 (West 1995)) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").[2]

Finally, the Court should make a preliminary finding that the attached Agreement is reasonable and adequate when the benefits to Settlement Class members described above are weighed against the cost and uncertainty of future, protracted litigation regarding Plaintiffs' claims. As noted above, the Defendant has indicated that it will vigorously oppose the claims asserted in this matter if the attached Agreement is not approved, and Plaintiff and Class Counsel have carefully considered the risks inherent to litigation and the defenses available to Defendant in agreeing to the benefits described herein.

---

[2] The fees that Defendant has agreed to pay to the Class Representative and Class Counsel are entirely consistent with those awarded by courts in analogous class action and TCPA cases. The Class Representative's incentive award promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits, reflects the time, cost, and effort that she has committed to this matter in order to bring relief to the class, and represents a significant reduction when compared to similar incentive awards in TCPA cases. *See, e.g., Goans Acquisition, Inc. v. Hard Wok Cafes, Inc. d/b/a Wok & Roll*, No. 0931-cv-17797 (Mo. Cir. Aug. 1, 2013) (approving $12,500 incentive award for class representative in TCPA class action); *Gutierrez, et al. v. Barclay's Group, et al.*, No. 10-cv-1012-DMS (S.D. Cal. 2012) (approving $10,000 incentive award for class representative in TCPA class action).

Similarly, the percentage of the Settlement Fund that Defendant has agreed to pay to Class Counsel as reimbursement for fees and costs represents the 33% standard enumerated by the Eleventh Circuit in similar class settlements. *See, e.g., Wolff v. Cash,* 2012 U.S. Dist. LEXIS 153786, 15-16 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.")(citing *Waters v. Int'l Precious Metals Corp., et al.*, 190 F.3d 1291, 1291 (11th Cir. 1999)) (awarding one-third on a $40 million recovery); *Goans Acquisition, Inc.*, Case No. 0931-cv-17797 (approving class counsel award of one-third of settlement fund ($2,076,666.66) in TCPA case).

While Plaintiff and Class Counsel believe that the violations of the TCPA alleged in this matter are clear, and are confident in the merits of their claims, both Plaintiff and Class Counsel acknowledge that litigation is inherently unpredictable, and that any adverse ruling on legal issues raised by the Defendant during the litigation of this matter, including, but not limited to, the propriety of class certification, legal standing of the Class Representative, and the proper interpretation and effect of the TCPA's implementing regulations, would functionally deny the class any and all relief.

As a result of the discovery described above, both Class Counsel and counsel for Defendant had ample foundation upon which to evaluate the proposed settlement.  Each party, therefore, possessed the necessary information to evaluate the strengths and weaknesses of their respective cases in order to discuss settlement effectively.  Armed with this information, the Parties were able to reach the present settlement only after extensive discovery, lengthy settlement discussions, and further negotiations over settlement terms and language.  As such, the Parties jointly assert that the uncertainty of these legal issues necessitates resolution, and that the attached Agreement represents a fair, reasonable, and adequate resolution that is in the best interests of all Parties and the Settlement Class.

**B.      The Proposed Settlement Class Should be Conditionally Certified**

A class may be certified "solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (citations omitted); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997).  In conditionally certifying a class for the purposes of settlement, the district court need not inquire whether the case, if tried, would present intractable management problems, but must still make a finding that the plaintiff has established the criteria

11

set out in Rule 23(a), Federal Rules of Civil Procedure, and at least one of the subsections of Rule 23(b).  As set forth below, the proposed Settlement Class in this matter easily satisfies each of the prerequisites for certification, and the Settlement Class should be conditionally certified for settlement purposes.

        i.    <u>Numerosity</u>

Rule 23(a)(1), Federal Rules of Civil Procedure, requires that the class be "so numerous that joinder of all members is impracticable."  In order to satisfy this requirement, "[p]laintiffs must only establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members."  *Avery v. Uniroyal Technology Corp.*, 2005 WL 1205607, at *2 (M.D. Fla. May 20, 2005) (citing *In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 427-28 (S.D. Fla. 1991)).  Towards this end, courts in the Eleventh Circuit have found joinder impracticable and the numerosity requirement satisfied in cases with even a minimal number of class members.  *See Cox v. Amer. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (forty class plaintiffs); *see also Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. 2009) (thirty-eight class plaintiffs); *Moreno-Espinosa v. J&J Ag. Products, Inc.*, 247 F.R.D. 686, 688 (S.D. Fla. 2007) (forty class plaintiffs).

Here, the Settlement Class as proposed easily satisfies the numerosity requirement. Based upon Class Counsel's extensive investigation and information obtained from the Defendant during discovery, the Parties have agreed for the purposes of settlement that Defendant successfully sent text message advertisements to 19,452 persons and/or entities, between May 10, 2018, and July 6, 2018.  *See* Bennett Decl. at 4 (Exhibit 2).  As such, and in line with the law cited above, joinder of these 19,452 persons and/or entities would be impracticable, and the numerosity requirement is satisfied.  *See Cox*, 784 F.2d at 1553 (holding,

for purposes of class certification, that "less than twenty-one is inadequate, more than forty adequate.").

    ii.   <u>Commonality</u>

The second requirement is that "there are common questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Traditionally, commonality refers to the group characteristics of the class a whole. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). As such, this prerequisite does not mandate that all questions of law or fact are common; a *single common question* of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685 (S.D. Fla. 2004). As long as a single common issue of fact or law is found, "factual differences among the claims of the putative class members do not defeat certification." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (citations omitted); *see also CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992) (same). Ultimately, the "burden to meet the commonality requirement of Rule 23(a) is relatively light." *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970, *6 (S.D. Fla. Jun. 4, 2009) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

The commonality element is satisfied here because the questions of law and fact refer to standardized conduct by the Defendant towards Plaintiff and members of the Settlement Class. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 687 (holding that commonality is satisfied when "defendants have engaged in a standardized course of conduct that affects all class members."). Through discovery, the Parties have limited membership in the Settlement Class to only those persons and/or entities who were sent similar alleged text message advertisements by or on behalf of the Defendant. *See* Bennett Decl. at 4 (Exhibit 2). Thus, the

sole remaining issue of law – whether the Defendant's alleged transmission of text message advertisements violated the TCPA and its implementing regulations – is common to all members of the Settlement Class.

      iii.    <u>Typicality</u>

The third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3), Fed. R. Civ. Pro. "In many ways, the commonality and typicality requirements of Rule 23(a) overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification. Traditionally, commonality refers to the group characteristics as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class. These requirements 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000) (citations omitted). A representative's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984).

Here, as discussed above in the context of commonality, the claims, legal theories, interest, and suffered injury of the named Plaintiff and the proposed Settlement Class are identical. The named Plaintiff and all members of the proposed Settlement Class received the same text messages, sent by or on behalf of the Defendant, in alleged violation of the TCPA. Thus, the typicality requirement is fully satisfied.

iii.  Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Rule 23(a)(3), Fed. R. Civ. Pro.  "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

With regards to the Class Representative, Jillian Gerstenberger has standing to bring an action for violation of the class members' rights protected by the TCPA and has no interest antagonistic or in conflict with the interests of the proposed Settlement Class members she seeks to represent.  As discussed more fully above, Jillian Gerstenberger and all members of the Settlement Class share a common goal in recovering statutory damages for the TCPA violations alleged in this matter.  Moreover, Jillian Gerstenberger fully understands her fiduciary role when serving as a representative of others in a class action, has contributed significant time and resources to this matter, and has, and will continue to, follow through with her obligations as Class Representative.

Similarly, proposed Class Counsel are all qualified, well-respected members of the legal community who have significant experience litigating class action matters of similar, size, scope, and complexity to the instant action.  *See* Bennett Decl. at 7-10 (Exhibit 2).  Class Counsel have previously litigated complex, statutory issues in federal court, have performed extensive research and are familiar with the legal and factual issues raised in this litigation, and have the personnel and resources to conduct litigation of this nature.  *See id.*  Throughout this litigation, Class Counsel have diligently investigated, prosecuted, and devoted substantial time and resources to

Plaintiff's and the Settlement Class's claims, and will continue to do so throughout the pendency of this action. *See id.* at 3.

     iii.    <u>Federal Rule of Civil Procedure 23(b)(3)</u>

Federal Rule of Civil Procedure 23(b)(3) permits class certification if the court finds that the questions of law and/or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Rule 23(a)(3), Fed. R. Civ. P. To be certified under Rule 23(b)(3), an action must satisfy both the predominance and superiority requirements. *See Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832 at *14.

     a.    *Predominance*

The Rule 23(b)(3) requirement inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. In order to satisfy this requirement, the named plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Common issues of law and fact predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

Again, predominance is easily satisfied here because the claims of both the Class Representative and the members of the Settlement Class all arise from Defendant's uniform conduct applicable to the Settlement Class as a whole. Through extensive discovery and negotiation, the Parties have successfully limited membership in the Settlement Class to only

those persons and/or entities who were sent a text message advertisement by or behalf of the Defendant during the pertinent timeframe. *See* Bennett Decl. at 4 (Exhibit 2). As such, predominance has been satisfied. *See Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832 at *14-15 ("Applying this [predominance] standard to the action, the Court finds that all of the claims of the named Plaintiff and the Proposed Class are based on the same legal theories and the same uniform advertising. Therefore, common issues substantially predominate over any individual issues.") (emphasis added).

        b.    *Superiority*

The focus of Rule 23(b)(3)'s superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Manno v. Healthcare Revenue Recovery Group, LLC,* 2012 U.S. Dist. LEXIS 132860, *18 (S.D. Fla. Sept. 18, 2012) (citations omitted). The "purpose of the superiority requirement is consistent with the overall goals of Rule 23, which is to assure that the class action is the most efficient, effective and economic means of settling the controversy." *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 337 (S.D. Fla. 1996) (citations omitted). "In many respects, the predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832 at *15 (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)).

Here, a class action will be superior to all other methods for fairly and efficiently adjudicating this controversy because "the proposed class members' claims are predicated on a common set of facts and concern the same product and advertising." *Wm. Wrigley Jr. Co.*, 2010

U.S. Dist. LEXIS 67832 at *15 (emphasis added).  Moreover, the interest of members of the Settlement Class in individually controlling the prosecution of separate actions is low, due to the statutory nature of the potential damages and the amount of each individual class member's damages.  *See id.* ("Moreover, if the Proposed Class is not certified, it is likely that potential class members would lack incentive to pursue their claims individually due to the small awards involved.").

## C.      Class Notice Should be Approved

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing."  *Manual for Complex Litigation, Fourth*, § 21.632-21.635 (West 2004); *see also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement, voluntary dismissal, or compromise].").  The standard for the adequacy of a settlement notice in a class action is measured by reasonableness.  *See Faught*, 2011 WL 5119115 at *4.  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).  The Federal Rules expressly approve of notice being disseminated via electronic means, as well as U.S. Mail.  Fed R. Civ. P. 23(c)(2)(B).

The attached, proposed Class Notice submitted by the Parties clearly meets this reasonableness standard in all respects.  The class notice in this case will be sent to class members in the first instance via email addresses identified by the Plaintiff through discovery.

Notice will also be sent via U.S. Mail to class members who are unable to successfully receive notice via email.  Moreover, the attached Class Notice (1) describes the nature and status of the litigation; (2) sets forth a clear definition of the proposed Settlement Class; (3) sets forth the basic terms of the proposed Agreement; (4) advises members of the proposed Settlement Class of the appropriate methods to either submit a claim form, opt-out, or object to the proposed Agreement; (5) informs members of the proposed Settlement Class of the identities of the Class Representative, Class Counsel, and the awards that each has applied for in this case; and (6) provides members of the proposed Settlement Class with contact information for both Class Counsel and the Settlement Administrator.

In granting preliminary settlement approval, the Court should also therefore approve the Parties' proposed form and method of providing notice to members of the proposed Settlement Class, as set forth in the attached Class Notice (Exhibit 1-B).

### IV.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Parties jointly request the Court's entry of an Order:

(1) granting preliminary approval of the proposed settlement as set forth in the attached Agreement (Exhibit 1);

(2) conditionally certifying the proposed Settlement Class, for the purposes of settlement, pursuant to Rule 23(a) and (b)(3), Federal Rules of Civil Procedure;

(3) directing that members of the Settlement Class be given notice of the pendency of this action and the proposed settlement in the form and manner proposed by the Parties in the attached Agreement (Exhibit 1) and Class Notice (Exhibit 1-B);

(4) appointing plaintiff Jillian Gerstenberger as Class Representative;

(5) appointing undersigned Plaintiff's counsel as Class Counsel pursuant to Rule 23(g), Federal Rules of Civil Procedure;

(6) scheduling a Final Fairness Hearing, at which time the Court will consider final approval of the settlement and final entry of the attached Agreement; and

(7) providing such other and further relief as the Court deems just and reasonable.

Respectfully submitted:

Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com
Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlawcollective.com
Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, FL 34698
Tel: (202) 709-5744

Peter Bennett
Florida Bar No. 68219
peterbennettlaw@gmail.com
Richard Bennett
Florida Bar No. 150627
Richardbennett27@gmail.com
Bennett & Bennett
1200 Anastasia Ave., Ofc 360
Coral Gables, Florida 33134
Tel: (305) 444-5925

By: /s/*Richard Bennett*
        Richard Bennett

*Attorneys for Plaintiff*

Dale L. Friedman, Esquire
Florida Bar No. 854646
dfriedman@conroysimberg.com
Rebecca J. Williams, Esquire
Florida Bar No. 403733
rwilliams@conroysimberg.com
Conroy Simberg
3440 Hollywood
Boulevard, Second Floor
Hollywood FL 33021
Tel: (954) 961-1400

Carlos Santisteban, Jr., P.A
Florida Bar No. 70530
6080 Bird Road, Suite 1
Miami, FL 33155
Telephone: 305.930.8200
carlos@csjrlaw.com

By: /s/*Rebecca J. Williams*
        Rebecca J. Williams

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 31st day of January, 2019, which will send a notice of electronic filing to all attorneys of record.

By:   *s/ Richard Bennett*

Richard Bennett