UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JILLIAN GERSTENBERGER, individually,
and on behalf of all others similarly situated,

    Plaintiffs,

vs.                                          Case No. 18-22312-Civ-Torres

BOLUFE ENTERPRISES, INC.,

    Defendant.
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

**and incorporated**

**MEMORANDUM OF LAW**

Plaintiff, Jillian Gerstenberger, individually and on behalf of the Settlement Class defined herein (hereinafter "Plaintiff"), hereby moves the Court for final approval and entry of the Settlement Agreement (hereinafter "Agreement") (D.E. 35-1), which Agreement was reached by Plaintiff and Defendant, Bolufe Enterprises, Inc. (hereinafter "Defendant") (collectively the "Parties"), and preliminarily approved by this Court. *See* D.E. 37, Order Preliminarily Approving Class Action Settlement and Authorizing Notice to the Settlement Class.

In support of this Motion, Plaintiff states as follows:

**I.**       **BACKGROUND**

Plaintiff brought this action, individually and on behalf of a group of similarly situated persons, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), and the regulations promulgated under the TCPA, by using an automatic telephone dialing system to send text message advertisements promoting its used car business to Plaintiff and

members of the Settlement Class, without obtaining prior express written consent. Specifically, Plaintiff has alleged that Defendant sent text message advertisements without first obtaining a written agreement signed by the person or entity being texted that states: "By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice," as required by 47 C.F.R. 64.1200(f)(8).

Defendant denies these allegations, denies all liability for the claims made in the litigation, and further denies violating the TCPA and the regulations promulgated under the TCPA. As such, the litigation in this matter has been hotly contested and has involved extensive discovery, including the exchange of documents; preparation and responses to multiple requests for production of documents; interrogatories; and the service of subpoenas on multiple, relevant third parties. *See* Bennett Decl., D.E. 35-2 at ¶ 4.

At the same time, the Parties engaged in arms' length negotiations for a comprehensive resolution of this litigation. *See id.* at ¶¶ 5-6. These negotiations included multiple, informal settlement discussions between counsel, a formal, all-day mediation with a certified mediator, Steven Jaffe, who has significant experience regarding the litigation and settlement of claims brought under the TCPA, fourteen (14) days of continuing negotiations between counsel following formal mediation, and, finally, the acceptance of a Mediator's Proposal put forth by Steven Jaffe and believed by him and both Parties to be a fair settlement of this dispute, which ultimately resulted in the attached Agreement. *See id.* at ¶¶ 5-6.

Under this resolution, as set forth more fully below and in the attached Agreement, the Parties stipulated to a conditional class, solely for the purposes of settlement, of 19,452 persons

and/or entities, who, between May 10, 2018, and July 6, 2018, were sent text message advertisements by or on behalf of the Defendant. *See id.* at ¶ 4.

Under this resolution, and as set forth more fully below and in the Agreement, Defendant agreed to make available $495,000.00 (the "Settlement Fund") to pay $175.00 to each settlement class member who timely submitted a valid claim form in exchange for a release of all claims against Defendant, and to pay for the costs and expenses associated with claims administration through the third-party administrator. Defendant has further agreed that Plaintiffs' counsel shall be paid a percentage of the Settlement Fund as compensation for their efforts on behalf of the class, and the Class Representative paid an incentive award of $7,500.00 for her efforts on behalf of the class.

As set forth more fully below, the Agreement is fair and represents a reasonable result for the Settlement Class. *See* Bennett Decl., D.E. 35-2 at ¶¶ 11-12. Given the regulatory uncertainty surrounding the underlying TCPA statute and its implementing regulations, Plaintiff acknowledges that complex, potential hurdles to class certification existed in this case. *See id*. Given these challenges, coupled with the ability and willingness of Defendant to continue its vigorous defense, the Agreement provides significant and certain recovery for the Settlement Class, and is in the best interests of their respective clients and the Settlement Class as a whole.

Finally, as further support for the reasonableness of the proposed Agreement, this settlement was reached only after substantial arms-length negotiations between experienced counsel. As such, the Agreement strikes a reasonable balance between the certain monetary benefit the Settlement Class will receive under this settlement, the fact that Defendant will vigorously oppose the claims asserted in the litigation if the settlement is not approved, and the attendant risks, costs, uncertainties and delays of litigation.

As such, the Agreement constitutes a fair, reasonable, and adequate resolution for the Plaintiff and the Settlement Class, pursuant to Rule 23(e)(2), Federal Rules of Civil Procedure, and the terms of the resolution, as set forth in the attached Agreement, are in the best interests of the Parties and the class.

Plaintiff therefore requests that the Court enter a Final Order: (1) granting final approval of the Agreement; (2) finding the Agreement is fair, reasonable and adequate; and (3) entering an Order and Final Judgment, whereby the entire case is dismissed with prejudice.[1]

## II. SUMMARY OF SETTLEMENT AND NOTICE

### A. The Settlement Class

The settlement has been reached on behalf of the "Settlement Class," defined as follows:

> All persons and entities that were sent one or more text messages by or on behalf of Defendant, advertising or promoting Defendant's goods or services, at any time between May 10, 2018, and July 6, 2018.

Excluded from the Settlement Class are Defendant, any parent, subsidiary, affiliate or controlled person of Defendant, as well as the officers, directors, agents, servants or employees of Defendant and the immediate family members of such persons, the named counsel in this litigation, and any member of their office and/or firm.

### B. Benefits to Class Members

Defendant, solely for the purposes of settlement and without admitting or conceding any fault, wrongdoing or liability, and in order to avoid the inconvenience and expense of further litigation, has agreed to create a Settlement Fund in order to provide a settlement payment of $175.00 to each settlement class member who timely submitted a valid claim form in exchange for a release of all claims against Defendant, as further defined in the Agreement. As discussed

---

[1] A proposed final order approving settlement, in the form approved by the Parties, is attached for the Court's convenience and consideration as Exhibit 1.

more fully below, this class relief mirrors – and in many cases, exceeds – those approved by courts in analogous TCPA cases, and should be similarly given final approval here.

### C. Notice

Pursuant to this Court's Preliminary Approval Order (D.E. 37), the Settlement Administrator sent the Class Notice by email to the email addresses of the Settlement Class members. *See* Merryman Decl. at ¶¶ 6-14, attached here to as Exhibit 2. Pursuant to this Court's Preliminary Approval Order, the Settlement Administrator also sent the Class Notice on a postcard by U.S. Mail to the last known address of any Settlement class member who did not have an email address, or whose email address was unknown or not valid, or where the email was not received. *Id.*; *see also* Preliminary Approval Order (D.E. 37) at pp. 3-4 ("The Court finds that the manner and substance of the proposed Class Notice is the best practicable notice under the circumstances and is reasonably calculated to apprise Settlement class members of the pendency of this action and their right to object to and to exclude themselves from the Settlement Class. The court further finds that the proposed Class Notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it satisfies the requirements of due process and Federal Rule of Civil Procedure 23. The plan is thus approved and adopted.").

The Class Notice provided the Settlement Class Members with a Proof of Claim form, summary of the settlement terms, and information on the procedure to file a claim, object to the settlement, or to opt out of the Settlement Class. The Notice identified the Settlement Administrator and provided a toll-free telephone number so that the Settlement Class members could ask questions. The Settlement Administrator also maintained a dedicated, encryption-protected website through which Settlement Class members could submit claims, and that posted

the Class Notice, Claim Form, and Settlement Agreement, excluding exhibits, as well as the dates and deadlines to submit Claim Forms and to opt out or object to the settlement, the date of the Final Approval Hearing, and contact information for the Class Administrator and Class Counsel. *See* Merryman Decl. at ¶ 15.

Pursuant to the Preliminary Approval Order, the Settlement Claim Form was required to be completed and submitted to the Settlement Administrator within sixty (60) days in order to be included as a Settlement Class Member and to qualify for the $175 settlement payment (objections were similarly due within sixty (60) days). The form was pre-populated with certain contact information, and the claimant had to include other contact information and verify ownership of or subscribership to the telephone number. The claim form could be returned by mail, by fax, or online. *Id*. at ¶ 16.

Upon the close of the class period, the Settlement Administrator had received 381 eligible claim forms from Settlement Class members[2], and <u>zero</u> objections or requests for exclusion. *See* Merryman Decl. at ¶¶ 18-19.

**D.     Release of Claims**

Subject to final approval by this Court, the Released Parties, as defined in the Settlement Agreement, shall be released from the claims of the Releasing Parties, also as defined in the Settlement Agreement, in accordance with the terms of the Settlement Agreement.

---

[2] The Agreement provided that the Parties would have the opportunity to review the claim forms and a timeframe in which to posit objections, if any. To that end, the Parties were to have received the claims fourteen (14) days before the Fairness Hearing. However, the Parties have just received the claim forms in the last two days. Defendant anticipates that objections or issues with these submissions, *if any*, will be known, discussed and potentially resolved by the time of the Fairness Hearing. Moreover, if there is a dispute about a claim, the Agreement provides that the Claims Administrator shall be the arbitrator of any such dispute. Therefore, while the Defendant reserve their right to not approve—and, therefore, not pay—claims if an objection is sustained as to a claim, they believe the Fairness Hearing can and should proceed and that the merits of this motion and final approval of the Agreement, as a whole, is not affected.

### E. Incentive Award and Attorneys' Fees

Subject to final approval by the Court, the Parties have agreed that Plaintiff will be awarded $7,500.00 from the Settlement Fund as compensation for her efforts as Class Representative on behalf of the Settlement Class. Subject to final approval by the Court, the Parties have further agreed that Class Counsel will be awarded an amount equal to one-third of the Settlement Fund (i.e., $165,000.00), inclusive of attorneys' fees and reasonable out-of-pocket expenses. Defendant does not oppose Plaintiff and her counsel seeking these amounts, and has agreed not to appeal any award that does not exceed these amounts. As discussed more fully below, these awards are consistent with the standards enumerated by the Eleventh Circuit in similar class settlements, and should be similarly approved here.

### F. Court Adoption and Jurisdiction

The Agreement is contingent upon entry of an order granting final approval to the terms of the Agreement. If the Court refuses to grant approval and/or modifies any of the terms of the Agreement, or if the Court's Preliminary Approval Order or Final Order is reversed or materially modified on appeal, then the attached Agreement shall be terminated (unless the Parties agree otherwise in writing, as provided in the Agreement) and neither the fact that the Agreement was made nor any stipulation, representation, agreement or assertion made in the attached Agreement or in negotiation of the settlement or its terms may be used against any Party.

The Parties further agree that the Court shall retain continuing jurisdiction over this Action and the Parties, including all of the Settlement Class Members, the administration and enforcement of the attached Agreement, and the benefits to the Settlement Class. Any dispute or controversy with respect to the interpretation, enforcement, or implementation of the attached Agreement shall be presented by motion to the Court and determined by the Court.

### III.     FINAL COURT APPROVAL

**A.     The Settlement Class Should be Certified Pursuant to FRCP 23**

Rule 23(e), Federal Rules of Civil Procedure, requires judicial approval for any compromise of claims brought on a class basis. Before certifying a class for the purposes of settlement, this Court must find that the criteria set out in Rule 23(a), and at least one of the subsections of Rule 23(b), have been met. The Court conditionally certified the Settlement Class in its Preliminary Approval Order.[3]

**B.     The Agreement is Fair, Reasonable and Adequate**

In addition to Rule 23's requirements, in determining whether to give final approval to a proposed settlement, "the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).[4] In recognition of the overriding public interest in settling and quieting litigation, particularly in the context of a class action, a court "must not turn the settlement hearing into a trial or a rehearsal of the trial; [the] court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination of the merits." *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972) (citations omitted). The settlement should be compared "with the likely rewards the class would have received following a

---

[3] *See* Preliminary Approval Order, D.E. 37 at ¶ 3 ("The Court finds that this conditional class certification is appropriate because: (a) the Settlement Class is so numerous that joinder of all members is impractical; (b) there are common questions of law and fact that predominate over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the claims of the class; (d) Plaintiff and its counsel will fairly and adequately protect the interests of the Settlement Class; and (e) a class action is the superior method for resolving this controversy, given the nature and small size of the class members' individual claims and their lack of interest in individually controlling the prosecution of separate actions, and that resolution on a class wide basis will promoted judicial economy and efficiency.").

[4] In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all decisions of the Fifth Circuit rendered prior to October 1, 1981, as binding precedent.

successful trial of the case," and should take into account practical considerations, such as the complexity of the case and the expense and likely duration of litigation. *Cotton*, 559 F.2d at 1330.

Courts have further consistently stressed that in weighing the benefits of settlement against the risk of continued litigation, the district court "is entitled to rely upon the judgment of experienced counsel for the parties," and that the recommendation of class counsel should be given a presumption of reasonableness. *Cotton*, 559 F.2d at 1330; *see also Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."); *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable, and adequate to all concerned.").

Guided by these overriding principles, "the Eleventh Circuit has identified six factors to be considered in analyzing the fairness, adequacy, and reasonableness of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement." *LaCour v. Whitney Bank*, 2012 U.S. Dist. LEXIS 151923 (M.D. Fla. 2012), *citing Bennett*, 737 F.2d at 986.

A review of these factors clearly demonstrates that the Agreement is fair, reasonable and adequate. The Agreement is the result of significant discovery and investigation and is the product of extensive, arm's-length negotiations between experienced counsel. Having evaluated the merits of the case, counsel for the Parties concluded that the Agreement is in the best interests of their respective clients and the Settlement Class as a whole, and that the Agreement strikes a reasonable balance between the certain monetary benefits the Settlement Class will receive under this settlement, the fact that Defendant will vigorously oppose the claims asserted in the litigation if the settlement is not approved, and the attendant risks, costs, uncertainties, and delays of litigation.

As discussed fully herein, a review of these factors clearly demonstrates that the Agreement is fair, reasonable, adequate, and should be finally approved. A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms' length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104 (quoting *Manual for Complex Litig.*, at § 30.42). Here, the Agreement was executed after extensive, often contentious, negotiations among experienced counsel, all of whom have devoted considerable time and effort to this litigation and settlement. Accordingly, this Court should apply a presumption that the settlement reached by the Parties is fair and reasonable.

Here, the settlement should be approved because both Parties recognize the substantial risks of proceeding with the litigation, and the costs in doing so. The parties have extensively analyzed the strengths and weaknesses of their respective positions and the risks, time, and costs of continued litigation. The certain monetary relief of $175.00 to every Class Member who submitted a timely and valid claim form that is verified and approved is considerable and there is

a material risk that continued litigation would result in a less favorable outcome for the Class Members and increased liabilities for Defendant.

Certain aspects of the TCPA and its implementing regulations have been the subject of extensive recent discussion and regulatory activity from the FCC, and that rulings from the FCC on these issues could prove adverse to either Party's position.  This regulatory uncertainty similarly favors resolution.  *See, e.g., In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 2015 U.S. Dist. LEXIS 17120, 790-92 (N.D. Ill. Feb 12, 2015) (discussing the "disparate interpretations" of the FCC's TCPA orders, and noting that "the split opinion among practitioners and courts … injects uncertainty into the litigation" and counsels in favor of settlement); *Wilkins v. HSBC Bank Nev., N.A.*, 2015 U.S. Dist. LEXIS 23869, 21 (N.D. Ill. Feb. 27, 2015) (approving TCPA class settlement in part because uncertainty regarding the TCPA "will continue to add significant risk to large TCPA litigation" favoring settlement of such claims).

While Plaintiff and Class Counsel believe that the violations of the TCPA alleged in this matter are clear, and are confident in the merits of their claims, Defendant vehemently disputes this contention, denied liability and contends that its defenses would prevail.  Both Plaintiff and Class Counsel acknowledge that litigation is inherently unpredictable, and that any adverse ruling on legal issues raised by the Defendant during the litigation of this matter, including, but not limited to, the propriety of class certification, legal standing of the Class Representative, the possibility of regulatory action from the FCC adverse to Plaintiff's position, and the proper interpretation and effect of the TCPA's implementing regulations, would functionally deny the class any and all relief.  *See* Bennett Decl., D.E. 35-2 at ¶ 11.  On the other hand, if the class was

11

to be certified, and Plaintiff prevailed at trial, the potential damages for each text message advertisement sent during the class period would amount to a significant liability.

As a result of discovery, both Class Counsel and counsel for Defendant had ample foundation upon which to evaluate the proposed settlement. Each Party, therefore, possessed the necessary information to evaluate the strengths and weaknesses of their respective cases in order to discuss settlement effectively. Armed with this information, the Parties were able to reach the present settlement only after extensive motion practice, discovery, lengthy settlement discussions, formal mediation, and further negotiations over settlement terms and language. As such, the uncertainty of these legal issues makes resolution via settlement desirable, and that the attached Agreement represents a fair, reasonable, and adequate resolution that is in the best interests of the Parties and the Settlement Class.

The reaction of the Settlement Class also favors approval. After detailed notices were sent to all members in the Settlement Class, the Settlement Administrator received **zero** objections and **zero** requests for exclusion. The absence of any meaningful objection by class members is an important factor in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1328 (S.D. Fla. 2007) (citations omitted) ("The reaction of the class is an important factor in gauging whether a settlement is fair, reasonable and adequate. While a low percentage of objections points to the reasonableness of a proposed settlement, a high percentage of objections signals that a proposed settlement is not fair or reasonable."); *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) ("[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness."); *Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437, 1458

(E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").

The Settlement Administrator has received three hundred and eighty-one (381) claims from Settlement Class members, each of whom will receive $175 under the Agreement. *See* Merryman Decl. at ¶¶ 18-19. This claims rate is well within the acceptable range for claims submissions in other TCPA cases, including those seen by the Settlement Administrator and supported by the relevant law. *See id.*; *Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416, *15-16, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) (granting final approval with a 1.9% claims rate, and noting that "[e]ach class member who submitted a claim is due to receive approximately $151 — not a trifling sum by any means, and in excess of the per claimant pay outs recently approved by other courts in TCPA class actions."); *id.* (citing *Arthur v. SLM Cor.*, No. C10-0198 JLSR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2-3 (claims rate of approximately 2%)); *Drug Reform Coordination Network, Inc. v. Grey House Publishing, Inc.*, No. 1:14-cv-00701 (D.D.C. February 10, 2017), Docket No. 62 (grating final approval with a 2.2% claims rate); *Barani v. Well Fargo Bank, N.A.*, No. 12-cv-02999, Dkt. 32 at *5-6 (S.D. Cal. Mar. 6, 2015) (granting approval of 1.17% claims rate). Regardless, all Settlement Class Members received the best notice practicable and were given ample opportunity to make a claim, object, or opt-out. The fact that none of the Settlement Class Members objected or opted-out, and those class members who did make a claim will receive $175, supports approval.

The opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam*, 2003 WL 22037741 at *6; *see also Radosti*, 717 F. Supp. 2d at 57. Counsel for the class have substantial

13

experience litigating TCPA class actions, and significant experience litigating class action matters of similar size, scope, and complexity to the instant action. *See* Bennett Decl., D.E. 35-2 at ¶¶ 8-10. Counsel strongly believe and represent that, given the risks attendant to further litigation, the terms of the proposed settlement are fair and reasonable and in the best interest of the class. *See Equal Rights Center*, 573 F. Supp. 2d at 213.

In the opinion of counsel, the attached Agreement provides Settlement Class Members who submit a valid and timely claim that is verified and approved with a substantial monetary recovery equal to $175. The $175 payable to such Settlement Class Members equals or exceeds amounts approved by courts in analogous TCPA cases, and should be similarly approved here. *See, e.g.,Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-2414-T-23TBM (M.D. Fla. Aug. 25, 2014) (each class member received store credit usable at the defendant's retail store and valued between $57.50 and $75.00); *Marvin Bondhus, MD, et al. v. Henry Schein, Inc.*, Case No. 14-22982-cv-Torres (S.D. Fla. May 18, 2016) (approving TCPA settlement providing for $100.00 in store credit per class member to be used to acquire surgical and medical supplies); *Knutson v. Schwan's Home Serv.*, 2014 U.S. Dist. LEXIS 99637 (S.D. Cal. 2014) ($20 per class member); *Kramer v. B2Mobile*, 10-CV-2722-CW (N.D. Cal.) ($100 per class member subject to pro rata reduction); *Gutierrez, et al. v. Barclay's Group, et al.*, 2012 U.S. Dist. LEXIS 190049, *6 (S.D. Cal. Mar. 12, 2012) ($125 per class member subject to pro rata reduction).

In the opinion of counsel, the Court should make a finding that the attached Agreement is fair, reasonable and adequate when the benefits to Settlement Class Members described above are weighed against the cost and uncertainty of future, protracted litigation regarding Plaintiffs' claims. As noted above, the Defendant has indicated that it will vigorously oppose the claims asserted in this action if the attached Agreement is not approved, and Plaintiff and Class Counsel

have carefully considered the risks inherent to litigation and the defenses available to Defendant in agreeing to the benefits described herein.

### C. The Class Counsel and Class Representative Awards are Fair and Reasonable

#### i. *Class Counsel Award*

The Supreme Court has recognized that "a reasonable fee is based on the percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 (1984); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (Since the 1880s, "this Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Awards of attorneys' fees based on a percentage of the total Settlement Benefit, such as here, serve the dual purpose of encouraging redress of damages caused to an entire class of persons, and discouraging similar future misconduct:

> [C]ourts … have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the [laws] on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

In recognition of these principles, the Eleventh Circuit has unequivocally held that attorneys' fees must be based on a reasonable percentage of the entire benefit originally made available to the class:

> After reviewing *Blum*, the [1985 Third Circuit] Task Force Report, and the foregoing cases from other circuits, we believe that the percentage of the fund

15

> approach is the better reasoned … Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) ("attorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 26002, 25-26 (S.D. Fla. 2014) (same).

The portion of the Settlement Fund that Defendant has agreed to pay to Class Counsel as reimbursement for fees and costs is consistent with the 33% standard enumerated by the Eleventh Circuit in similar class settlements. *See, e.g., Wolff v. Cash,* 2012 U.S. Dist. LEXIS 153786, 15-16 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing *Waters v. Int'l Precious Metals Corp., et al.*, 190 F.3d 1291, 1291 (11th Cir. 1999)) (awarding one-third on a $40 million recovery); *Marvin Bondhus, MD, et al. v. Henry Schein, Inc.*, Case No. 14-22982-cv-Torres (S.D. Fla. May 18, 2016) (awarding one-third of maximum settlement benefit of up to $3,300,000); *Goans Acquisition, Inc. v. Hard Wok Cafes, Inc. d/b/a Wok & Roll*, No. 0931-cv-17797 (Mo. Cir. Aug. 1, 2013) (approving class counsel award of one-third of settlement fund ($2,076,666.66) in TCPA facsimile case).

Moreover, this method of computation for class action percentage fee awards is utilized regardless of how many class members redeem the benefits made available to the class. As noted by the Eleventh Circuit, based on the Supreme Court's decision in *Boeing Co. v. Van Gemert*:

> "[T]he question arises concerning whether the benchmark common fund amount for fee award purposes comprises only the amount claimed by class members or

> that amount potentially available to be claimed.  In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed."

*Waters*, 190 F.3d at 1297, *citing Boeing Co.*, 444 U.S. at 477 (holding that the number of claims does not affect the benefit Class Counsel created for the Settlement Class or the proportionate share of fees to which Class Counsel are entitled); *Stahl v. Mastec, Inc.*, 2008 WL 2267469, 1 (M.D. Fla. 2008) ("Notably, the Supreme Court and the Eleventh Circuit have held that it is appropriate that the attorney's fees be awarded on the entire Maximum Gross Settlement Amount even though amounts to be paid to settlement class members who do not file a claim form will remain the sole and exclusive property of the defendant."); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue that the benchmark common fund amount for fee award purposes is calculated from the amount potentially available to class members, regardless of the amount actually claimed); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) (holding that the "district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund," and finding that the attorneys' fee award should have been based on a percentage of the total recovery fund - $4.5 million – even though the actual payout to class members totaled approximately $10,000); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806 (E.D. Wis. 2009) (same).  Nonetheless, Plaintiff notes that the time actually expended by Class Counsel in this heavily litigated matter far exceeds the award sought.

          ii.     <u>*Class Representative Award*</u>

As outlined in the Settlement Agreement, the Parties further request that the Court award Plaintiff the amount of $7,500 for her service as Class Representative, as detailed in the

Agreement and as preliminarily approved by this Court. Class representative payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006); *see also Ingram v. Coca-Cola, Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (same). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, 6 (S.D. Fla. 2010). [5]

While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining the reasonableness of incentive awards, other courts have considered some of the following factors: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class benefited from those actions; (3) the amount of time and effort the class representatives expended in pursuing the litigation; and (4) awards in similar cases. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Plaintiff has standing to bring an action for violation of the class members' rights protected by the TCPA and has no interest antagonistic or in conflict with the interests of the proposed Settlement Class members she seeks to represent. *See* Gerstenberger Decl. at ¶ 5, Exhibit 3. As discussed more fully above, Plaintiff and all members of the Settlement Class share a common goal in recovering statutory damages for the TCPA violations alleged in this matter. Moreover, Plaintiff fully understands her fiduciary role when serving as a representative

---

[5] *See, e.g., Altamonte Springs Imaging v. State Farm Mutual Automobile Insurance Co.*, 12 So. 3d 8850, 857 (Fla. 3d DCA 2009) ("[t]he trial court correctly found that a payment of $10,000 to Open MRI as a representative plaintiff is reasonable. The position as fiduciary for the class is less an honor than a headache. The representative plaintiff is identified as a class litigant in public records (potentially affecting credit reports and disclosures for financing), is subject to fiduciary duties to the class, may be deposed and required to produce records, and must meet with counsel and appear in court.").

of others in a class action, has contributed significant time and resources to this matter, and has, and will continue to, follow through with her obligations as Class Representative. *See id*. at ¶¶ 4-6. Finally, the $7,500 amount requested represents a significant reduction when compared to incentive awards in similar TCPA cases. *See, e.g., Goans Acquisition, Inc. v. Hard Wok Cafes, Inc. d/b/a Wok & Roll*, No. 0931-cv-17797 (Mo. Cir. Aug. 1, 2013) (approving $12,500 incentive award for class representative in TCPA facsimile class action); *Gutierrez, et al. v. Barclay's Group, et al.*, No. 10-cv-1012-DMS (S.D. Cal. 2012) (approving $10,000 incentive award for class representative in TCPA class action); *Saf-T-Guard International, Inc. v. Seiko Corp. of America*, 09-cv-0776 (N.D. Ill. 2011) (Doc. 100) (approving $12,000 incentive award to class representative in TCPA settlement).

As such, and in light of the above, this Court should find that the Class Counsel and Class Representative awards, as outlined in the Agreement and as preliminarily approved by this Court, are fair, reasonable and adequate, and enter them as part of the final judgment in this case.

### IV.  CONCLUSION

WHEREFORE, for all of the foregoing reasons, it is hereby requested that the Court's enter an Order as follows:

(1) granting final approval to the class-wide Settlement Agreement negotiated by the parties as fair, reasonable and adequate;

(2)  approving the Class Counsel and Class Representative awards as set forth in the Agreement;

(3)  ordering the Settlement Administrator to distribute settlement checks to those Class Members who submitted timely, valid claims;

(4) dismissing the case, with prejudice as to all claims by the Settlement Class; and

(5) providing such other and further relief as the Court deems just and reasonable.

Respectfully submitted:

Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com
Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlawcollective.com
Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, FL 34698
Tel: (202) 709-5744

Peter Bennett
Florida Bar No. 68219
peterbennettlaw@gmail.com
Richard Bennett
Florida Bar No. 150627
Richardbennett27@gmail.com
Bennett & Bennett
1200 Anastasia Ave., Ofc 360
Coral Gables, Florida 33134
Tel: (305) 444-5925

By: /s/*Richard Bennett*
      Richard Bennett

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 20th day of June, 2019, which will send a notice of electronic filing to all attorneys of record.

By:   s/ *Richard Bennett*
          Richard Bennett

20